**AFFIDAVIT IN SUPPORT OF ARREST**

On or about July 17, 2013, agents from the Federal Bureau of Investigation ("FBI") were made aware that an inmate ("Inmate #1") housed at the D.C. Department of Corrections ("DOC"), Correctional Treatment Facility ("CTF") located at 1901 E Street, S.E., in Washington, D.C., was conspiring with correctional officers to smuggle narcotics and other contraband into CTF.

In or around October 2013, after being confronted by law enforcement, Inmate #1 admitted to his smuggling activities. On or about November 1, 2013, your affiant interviewed Inmate #1. Inmate #1 admitted that in order to smuggle narcotics and other contraband into CTF Inmate #1 had worked with two different correctional officers who worked at CTF – correctional officer #1 ("CO1"), and correctional officer #2, later identified as defendant Lenard Fleming (the "defendant," or "defendant Fleming"). Inmate #1 made payments to defendant Fleming in exchange for defendant Fleming's agreement to smuggle narcotics and other contraband into CTF for further distribution by Inmate #1 to other inmates housed at CTF. Independent of the agreement and transactions between defendant Fleming and Inmate #1, Inmate #1 made payments to CO1 in exchange for CO1's agreement to smuggle narcotics and other contraband into CTF for further distribution by Inmate #1 to other inmates housed at CTF.

At all times relevant to this Statement of Facts, defendant Fleming was working as a correctional officer at CTF for the Corrections Corporation of America ("CCA"). CCA contracts with the D.C. DOC to operate and manage CTF. At all times relevant to this Statement of Facts, defendant Fleming was a "public official," in that defendant Fleming was an employee of CCA acting for or on behalf of the District of Columbia Department of Corrections.

According to Inmate #1, Inmate #1 maintained contacts with individuals outside of CTF who would meet with defendant Fleming. During these meetings with defendant Fleming, Inmate #1's contacts provided the contraband to be smuggled into CTF to defendant Fleming, and made cash payments of various amounts (depending on the type of contraband and the amount of contraband to be smuggled into CTF) to defendant Fleming in exchange for his agreement to smuggle contraband into CTF. After defendant Fleming received the contraband and cash payment, defendant Fleming would hide the contraband on his person, enter CTF with the contraband, and eventually provide the contraband to Inmate #1 in Inmate #1's jail cell.

On or about December 30, 2013, your affiant met with Inmate #1. Inmate #1 agreed to cooperate with the FBI in an attempt to complete a controlled undercover transaction between Inmate #1 and defendant Fleming and an undercover agent from the FBI ("UC"). Inmate #1 advised that Inmate #1 would plan to send word to defendant Fleming that one of Inmate #1's "peoples" would be contacting Fleming to set up a transaction. Inmate #1 provided your affiant with defendant Fleming's cell phone number in order for the UC to contact defendant Fleming to arrange a meeting, at the meeting the UC would provide defendant Fleming with a cell phone, a cell phone charger, and cigarettes. Inmate #1 advised law enforcement that the price for the transaction would be $750, and that the UC would need to provide $750 in cash to defendant Fleming at the meeting.

The cell phone number that Inmate #1 provided was XXX-XXX-9808. Telephone records from the provider confirm that XXX-XXX-9808 is registered to defendant Fleming's wife.

On or about January 3, 2014, between approximately 6:25 p.m. and 7:30 p.m., the UC placed a recorded telephone call to XXX-XXX-9808. A male, who later identified himself as "Big Boy," answered the call. The UC and Big Boy discussed meeting. "Big Boy" told the UC that he would not be able to meet that day, but that he would talk to Inmate #1 and call the UC the following day. The UC indicated that the UC had a cell phone and cigarettes to provide for Inmate #1. The entire conversation was captured on an audio recording device.

On or about January 3, 2014, FBI agents prepared items for the UC to deliver to defendant Fleming, including the following:

- $750 in U.S. currency

- A Samsung cellular telephone, Model # SPH-M830 UD. This phone contained the following additional identifying information:
  - FCC ID: A3LSPHM830
  - DEC 268 436 462 910 769 274
  - HEX A00 000 45A 453 453 7A

- A Samsung battery, with the following identifying information:
  - E B 494865VO 1750mAh
  - S/N AA1DA195S/5-B

- A cell phone charger

- Four packs of Newport cigarettes
  - Agents placed a small green sticker on the bottom of the outside of each box of cigarettes. The green stickers were placed on the cigarettes so that Inmate #1 could remove the stickers and present each sticker to the FBI in the event that Inmate #1 FBI were to be unable to hide the cigarettes from the view of correctional officers, and forced to destroy them.

On or about January 4, 2014, the UC exchanged several text messages with XXX-XXX-9808, in which the parties arranged to meet at the Coral Hills Shopping Center on Marlboro Pike in Maryland at 8:30 a.m. on January 5, 2014. Images of the text messages were captured by FBI agents.

On or about January 5, 2014, the UC drove to the parking lot of the Coral Hills Shopping Center at 4801 Marlboro Pike, Capitol Heights, Maryland.  At approximately 8:25 a.m., a Chevrolet Impala entered the parking lot.  An individual wearing a Redskins jacket and black stocking cap exited the Impala and entered the UC's vehicle.   This individual was later identified as defendant Fleming.  The UC gave defendant Fleming a brown paper bag containing the items described above ($750, cell phone with battery, cell phone charger, and four packs of Newport cigarettes).  Defendant Fleming took the cash and said to the UC, "What's this?  Seven fifty?"  The UC responded, "Yup, seven fifty."   The meeting was captured on video and audio recording.

On or around January 8, 2014, Inmate #1 met in an empty cell with Inmate #3, who produced a stocking cap from his genitals and laid the cap on the ground.  Inside the cap were: one cell phone (with battery), cell phone charger, and four packs of Newport cigarettes, each with a small green sticker attached to the outside of the bottom of the package.   Inmate #3 told Inmate #1 that Inmate #3 had received the items from "Big Boy," who Inmate #1 interpreted as a reference to defendant Fleming.

On or about January 11, 2014, Inmate #1 provided FBI agents with one business card with a small green sticker affixed to it.  The small green sticker was taken from one of the boxes of Newport cigarettes that were provided to Inmate #1 by defendant Fleming through Inmate #3.   On or about January 13, 2014, Inmate #1 provided FBI agents with the cell phone, cell phone charger, and three small green stickers that were affixed to an address label bearing Inmate #1's name.  The small green stickers were from the remaining three packages of Newport cigarettes that were provided to Inmate #1 by defendant Fleming through Inmate #3.

Inmate #1 told FBI agents that Inmate #1 gave one package of Newport cigarettes to Inmate #3.  Inmate #1 destroyed the remaining 3 boxes of Newport cigarettes.  However, Inmate #1 removed the small green stickers attached to each box of cigarettes.  Each sticker was then attached to a separate surface and provided to FBI as described above.

The cell phone that was recovered was a Samsung cellular telephone, Model # SPH-M830 UD, and contained identifying information: FCC ID: A3LSPHM830; DEC 268 436 462 910 769 274; and HEX A00 000 45A 453 453 7A – that is, the same identifying information as the cell phone provided by the UC to defendant Fleming on January 5, 2014.

On January 3, 2014, your affiant reviewed law enforcement and other databases to identify defendant Fleming.  Your affiant identified an individual with the name Lenard Clinton Fleming, a/k/a Leonard Clinton Fleming, who had social security number XXX-XX-8279, and date of birth 06/29/1960.  A photograph taken from the Maryland Department of Motor Vehicles ("DMV") of that individual was presented to a D.C. Department of Corrections investigator, who confirmed that the individual in that DMV photograph was defendant Fleming.

Separately, on or about January 3, 2014, this same photograph of Leonard Clinton Fleming, a/k/a Lenard Clinton Fleming, with social security number XXX-XX-8279, and date of birth 06/29/1960, was shown to the UC prior to the UC meeting with defendant Fleming.

After the UC met with defendant Fleming on January 5, 2014, the UC indicated that the individual with whom the UC met did not appear to be the same individual as indicated on the DMV photograph that was shown to the UC.

On or about January 6, 2014, the Department of Corrections investigator provided your affiant with identification information for defendant Fleming. Defendant Fleming's social security number is XXX-XX-0187, and date of birth 05/03/1980. The Department of Corrections investigator reviewed the Washington Area Law Enforcement Systems ("WALES") database for defendant Fleming, obtained a photograph of defendant Fleming through WALES, and confirmed that the individual in the WALES photograph was the Lenard Fleming who worked as a correctional officer at CTF.

On or about January 15, 2014, the UC reviewed the WALES photograph of defendant Fleming and confirmed that the individual in the photo was the same individual that the UC met on January 5, 2014, wearing a Redskins jacket and black stocking cap driving a Chevrolet Impala, who entered the UC's vehicle, and to whom the UC gave $750 in cash, a cell phone with battery, a cell phone charger, and four packs of Newport cigarettes.

On or about April 17, 2014, Inmate #1 was shown a single confirmation photo of defendant Fleming. When Inmate #1 saw the photo, Inmate #2 confirmed that the individual in the photo was the individual Inmate #1 knew as "Fleming" or "Big Boy"; that the individual in the photo was the same person who had smuggled narcotics and other contraband for Inmate #1 into CTF; and that the individual in the photo was the same individual who provided Inmate #1 with a cellular phone (Samsung cellular telephone, Samsung cellular telephone, Model # SPH-M830 UD, and contained identifying information: FCC ID: A3LSPHM830; DEC 268 436 462 910 769 274; and HEX A00 000 45A 453 453 7A) with battery, and cigarettes through Inmate #3 on January 8, 2014. With the exception of defendant Fleming's days off, Inmate #1 saw defendant Fleming on almost a daily basis for at least the past twelve months.

At all times relevant to this Statement of Facts, defendant Fleming corruptly demanded and received the money described above from the UC and other individuals in return for defendant Fleming being induced to act in violation of defendant Fleming's official duties as a correctional officer at CTF – that is, maintaining the safety and security of CTF, including the enforcement of the unlawful transport and distribution of narcotics and other contraband into and within CTF.

I declare that the following is true and correct.

_____
Special Agent Claro R. Miranda
Federal Bureau of Investigation

Subscribed and sworn to before me this _____ day of April, 2014, at the District of Columbia.

_____
THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE